1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                   NORTHERN DISTRICT OF CALIFORNIA
9

<table>
<tr><td>

10   SECURITIES AND EXCHANGE
     COMMISSION,
11
                      Plaintiff,
12
         v.
13
     BERNARDO MENDIA-ALCARAZ, et al.,
14
                      Defendants.

</td><td>

Case No.  24-cv-05823-RS

**ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT**

</td></tr>
</table>

15
16                           **INTRODUCTION**
17        This is a civil securities enforcement action brought by the Securities and Exchange
18  Commission ("the SEC") against defendants Bernardo Mendia-Alcaraz and Toltec Capital LLC
19  (collectively, "defendants") and Relief Defendants Edith F. Ramirez Cano and Fondo Toltec S de
20  RL de CV (collectively, "relief defendants"). The complaint alleges defendants engaged in
21  securities fraud, made unregistered securities offerings, and deceived investors through materially
22  false and misleading statements in violation of the Securities Act of 1933 ("Securities Act"), the
23  Securities Exchange Act of 1934 ("Exchange Act'), and the Investment Advisers Act of 1940
24  ("Advisers Act"). The SEC seeks injunctive relief, disgorgement of the proceeds of the unlawful
25  activities, and the imposition of civil monetary penalties. Neither defendants nor relief defendants
26  filed an answer to the complaint or sought relief from default. For the following reasons, the
27  SEC's motion for default judgment will be granted.
28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## BACKGROUND

Defendant Toltec Capital is a California limited liability company, with its principal place of business in San Francisco, California. Toltec Capital described itself as "a San Francisco based private equity firm focused on real estate and index fund investments." Toltec Capital is wholly owned and controlled by defendant Mendia-Alcaraz, a resident of San Francisco, who serves as its managing partner and CEO. Mendia-Alcaraz has control over Toltec Capital's bank accounts and statements made by Toltec Capital, including statements in securities offering documents, statements to investors, and statements to the public. Prior to his involvement with Toltec Capital, Mendia-Alcaraz was held in California state detention facilities from May 2007 to July 2009 for alleged financial crimes. Additionally, in February 2010, Mendia-Alcaraz pled no contest to charges of check fraud and theft under California Penal Code §§ 476 and 487. Finally, Mendia-Alcaraz unsuccessfully filed bankruptcy proceedings at least seven times, between August 2018 and December 2019.

Relief defendant Ramirez Cano is a resident of California who shares a residential address with Mendia-Alcaraz in San Francisco. Relief defendant Fondo Toltec is a Mexican limited liability company based in Mexico City, Mexico. According to Toltec Capital, Fondo Toltec is an operating company of Toltec Capital for the purpose of developing real estate in Mexico. Mendia-Alcaraz also serves as the CEO of Fondo Toltec.

The complaint avers that between December of 2019 and September of 2023, defendants raised approximately $3.3 million from 41 investors through the unregistered offer and sale of securities in the form of pooled investment vehicles, promissory notes, and joint venture agreements (collectively, the "Toltec Funds"). Toltec Capital also guaranteed investors a full return of their invested capital and, in many instances, dividend disbursements of between 21% and 36.88% (depending on the Toltec Fund) at the end of their investment period.

Although the Toltec Funds purported to identify various investment strategies such as securities trading or providing short-term financing for real estate purchases, investor proceeds were often misappropriated for Ponzi-like payments to other investors or for Mendia-Alcaraz's

personal expenses. Additionally, Mendia-Alcaraz transferred investor funds from Toltec Capital to relief defendants, who lacked a legitimate claim to the investor funds. Consequently, Toltec Capital rarely had sufficient money to cover all investors' outstanding principal, interest, and dividend payments. Defendants never returned t the investment principal to 33 investors, resulting in the loss of approximately $2.2 million in the investors' principal, not including interest or dividend payments owed.

The complaint alleges defendants made materially false statements and misrepresentations regarding not only the return of investor principal and other payments, but also about Mendia-Alcaraz's qualifications as an investment manager during the offer and sale of the Toltec Funds. For example, Toltec Capital portrayed Mendia-Alcaraz as having graduated from the Goldman School of Public Policy at the University of California at Berkeley, which Mendia-Alcaraz never in fact attended. Additionally, defendants never informed investors of Mendia-Alcaraz's criminal history and multiple bankruptcy filings.

The SEC brought this action in August of 2024, alleging violations under various provisions of the Securities Act, the Exchange Act, and the Advisers Act. Summons and complaint were served on defendants and relief defendants by a registered process server. Neither defendants nor relief defendants timely responded to the complaint.

In late 2024, Mendia-Alcaraz contacted SEC's counsel by email, requesting an extension of time to respond to the complaint. SEC stipulated to a 14-day extension, but defendants and relief defendants never subsequently responded. After the Clerk then entered default at the SEC's request, Mendia-Alcaraz emailed SEC's counsel, stating he would seek relief from default. Neither defendants nor relief defendants has ever done so.

**LEGAL STANDARD**

Following entry of default, courts are authorized to grant default judgment at their discretion. *See* Fed. R. Civ. P 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the factors the court may consider include: (1) the possibility of prejudice

United States District Court
Northern District of California

1    to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the

2    complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning

3    material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy

4    underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*,

5    782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the

6    plaintiff's complaint are taken as true, except for those relating to damages. *TeleVideo Sys., Inc. v.*

7    *Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

8

9                                    **DISCUSSION**

10   **A.  Jurisdiction**

11        A court must confirm that it has both subject matter and personal jurisdiction prior to

12   assessing the merits of a default judgment. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). It

13   must also "ensure the adequacy of service on the defendant." *Produce v. Cal. Harvest Healthy*

14   *Food Ranch Mkt.* No. 11-CV-4814, 2012 WL 259575, at *2 (N.D. Cal. Jan. 27, 2012). Here,

15   federal subject matter jurisdiction exists under 28 U.S.C. § 1331 because the claims allege

16   violations of federal law. Service is also adequate based on the affidavits of the process server.

17   The remaining question is whether personal jurisdiction can be exercised over defendants and

18   relief defendants. The SEC avers Mendia-Alcaraz and Ramirez Cano resided in San Francisco

19   during the period specified in the complaint and that Toltec Capital had its principal place of

20   business in San Francisco. These facts, taken as true, are sufficient to establish general personal

21   jurisdiction over Mendia-Alcaraz, Ramirez Cano, and Toltec Capital. *See Warfield v. Alaniz*, 569

22   F.3d 1015, 1028-29 (9th Cir. 2009).

23        Relief defendant Fondo Toltec is a Mexican entity based in Mexico City. Accordingly,

24   there must be sufficient "minimum contacts" to exercise specific personal jurisdiction over it. *See*

25   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985) (citation omitted). Because federal

26   securities laws authorize nationwide service of process, an inquiry into the exercise of specific

27   personal jurisdiction by the relevant forum is "whether the party has sufficient contacts with the

28

United States District Court
Northern District of California

United States, not any particular state. *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985) (internal quotations omitted); *see also* 15 U.S.C. §§ 77v(a) and 78aa. Minimum contacts are found when "the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted).

Under the three-prong test established by the Ninth Circuit, specific personal jurisdiction may be exercised over Fondo Toltec if: (1) Fondo Toltec purposefully availed itself of the privilege of conducting activities in the forum; (2) the SEC's claims arise out of or relate to those actions; and (3) the exercise of jurisdiction is reasonable. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987); *see also Burger King*, 471 U.S. at 476-78. Under this test, the SEC bears the burden satisfying the first two prongs, at which point the burden shifts to Fondo Toltec to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

First, purposeful availment is met if there is evidence that a defendant "purposefully availed himself of the privilege of doing business in a forum," shown through evidence of the defendant's actions in the forum "such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. In so doing, "a defendant thus invok[es] the benefits and protections of [the forum state's] laws" and must, as a quid pro quo, "submit to the burdens of litigation in that forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Burger King*, 471 U.S. at 476. Here, the SEC has met its burden of showing purposeful availment. Specifically, the promissory notes executed by investors in California contained an "Investment Capital Guarantee," promising that "Toltec Capital LLC and Fondo Toltec S de RL de CV jointly and severally guarantee the investment capital" of the investor. The notes further provided that "This Joint Venture Agreement shall be construed and governed by the laws of the State of California and . . . [a]ll obligations hereunder shall be deemed performable in the City and County of San Francisco, California." Fondo Toltec's contractual obligations with California investors constitute

United States District Court
Northern District of California

purposeful availment of the benefits and protections of California law because: (1) the "substance of the relationship was formed" in California through Defendants' solicitation of California investors; (2) the law governing the contracts is the law of California; (3) the contract identifies San Francisco as the location for the execution of the contract; and (4) the contract was ratified by Fondo Toltec through its agent Mendia-Alcaraz. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (citation omitted). Thus, by invoking the benefits and protections of California law, Fondo Toltec must also "submit to the burdens of litigation" in California. *Hansen*, 357 U.S. at 253.

Second, the SEC's claims against Fondo Toltec as a relief defendant inarguably arise directly from its contractual role in the investment scheme. Finally, there is nothing to suggest the exercise of jurisdiction over Fondo Toltec is otherwise unreasonable. Accordingly, jurisdiction is proper as to all defendants and relief defendants.

### B. The *Eitel* Factors

With jurisdiction established, an analysis of the *Eitel* factors weighs in favor of granting default judgment.

#### 1. Possibility of Prejudice

The first factor concerns the prejudice to the SEC that would result if default judgment were denied. Such prejudice would "necessarily flow[]" from a meritorious claim, "because, in the absence of a default judgment, plaintiff 'would be without other recourse for recovery' to which it is entitled." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) (citation omitted). Absent default judgment, the SEC, and the public it is charged with representing, will have no way to obtain the relief it seeks. Therefore, the first *Eitel* factor supports default judgment.

United States District Court
Northern District of California

**2.  Merits of Substantive Claims and Sufficiency of Complaint**

The second and third *Eitel* factors examine the merits of the SEC's substantive claims and the sufficiency of the complaint, which often are analyzed together. These two factors require that plaintiff's allegations "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Accepting the SEC's factual allegations as true, the complaint adequately establishes the existence of violations of the relevant securities law and the second and third *Eitel* factors support default judgment.

### *i.   Claim under Sections 5(a) and (c)*

Under Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a) and (c), it is "unlawful to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1085 (9th Cir. 2010). To establish a *prima facie* violation of Section 5, the SEC must show that "(1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce." *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007). The SEC bears the initial burden of proving defendants violated the registration provisions, at which point the burden shifts to defendants to prove that an exemption applies. *SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980).

Here, the SEC has sufficiently alleged defendants offered and sold securities in the form of promissory notes and joint venture agreements without filing a registration statement with the SEC. Defendants' conduct also involved interstate commerce through the usage of the internet to solicit investors. Further, because defendants failed to respond in this action, they have not met their burden to prove an exemption from Section 5's registration requirements. Accordingly, the SEC has made a *prima facie* showing that defendants violated Sections 5(a) and (c).

United States District Court
Northern District of California

### ii.  Claims under Section 17(a), Section 10(b), and Rule 10b-5

Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, of the Exchange Act prohibit fraudulent conduct "in the offer or sale of securities" or "in connection with the purchase or sale of a security." *Platforms Wireless*, 617 F.3d at 1092. Specifically, a Section 17(a) violation requires the SEC to prove defendants, in connection with the offer or sale of a security: (1) employed any device, scheme, or artifice to defraud; or (2) obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements not misleading; or (3) engaged in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. 15 U.S.C. § 77q(a). Similarly, a violation Section 10(b) and Rule 10b-5 thereunder requires the SEC to show defendants "(1) made a material misrepresentation or omission (2) in connection with the purchase [or] sale [of a] security (3) with scienter (4) in interstate commerce." *Platforms Wireless*, 617 F.3d at 1092; *see also* 17 C.F.R. § 240.10b-5.

The SEC has sufficiently alleged defendants engaged in violations of the relevant statutes. Specifically, the SEC has shown defendants made numerous false and misleading statements in connection with the offer and sale of Toltec Capital securities including: (1) falsely guaranteeing that investors would receive all of their invested capital; (2) falsely representing that investor funds would only be used for investment purposes; (3) misrepresenting Mendia-Alcaraz's credentials; and (4) failing to disclose his multiple bankruptcy filings and criminal history.[1] These false statements and misrepresentations were material because a reasonable investor would want to know that: (1) defendants never maintained funds sufficient to guarantee repayment of invested funds; (2) the funds were not invested but used for personal expenses or Ponzi-like payments to other investors; and (3) Mendia-Alcaraz had not attended the Goldman School of Public Policy

---

[1] Toltec Capital is an entity wholly owned and controlled by Mendia-Alcaraz. Accordingly, Mendia-Alcaraz's conduct and scienter are imputable to Toltec Capital. *See In re ChinaCast Educ. Crop. Sec. Litig.*, 809 F.3d 471, 475-77 (9th Cir. 2015).

but had repeatedly filed for bankruptcy and had a criminal history related to financial crimes. *See United States v. Jenkins*, 633 F.3d 788, 802 (9th Cir. 2011) (citation omitted) (holding that information is "material if 'a reasonable investor would have considered it useful or significant'").

Additionally, defendants' statements also establish a high degree of scienter. Based on his ownership and control of Toltec Capital, Mendia-Alcaraz either knew, or was reckless in not knowing, that Toltec Capital: (1) did not have sufficient funds to guarantee investors their invested capital; (2) that investor funds were used for improper purposes; and (3) that his personal history was misrepresented to investors. *See, e.g. SEC v. JSG Cap. Investments LLC*, No. 16-CV-02814 2017, WL 3579570, at *5 (N.D. Cal. June 30, 2017), *report and recommendation adopted*, No. 16-CV-02814, WL 3575599 (N.D. Cal. July 28, 2017) (finding that "the alleged course of conduct—including using the vast majority of funds received either for insiders' personal benefit or as Ponzi-like payments to earlier investors, as well as unfounded representations regarding . . . the existence of an insurance policy—strongly supports the inference of scienter."). Finally, the interstate commerce requirement is established given defendants' usage of the internet to solicit investors.

### iii.  Claim under Section 206(4) and Rule 206(4)-8

Section 206(4) of the Advisers Act makes it unlawful for any "investment adviser…to engage in any act, practice or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b-6(4). Specifically, a Section 206 violation requires the SEC to show that Defendants are "investment advisers," or a "person who, for compensation, engages in the business of advising others . . . as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(a)(11). An investment adviser under Section 206 includes persons who manage the funds of others for compensation. *See SEC v. Trabulse*, 526 F.Supp.2d 1008, 1020 n.6 (N.D. Cal. 2007) (citation omitted). Rule 206(4)-8(a) further prohibits "any investment advisor to a pooled investment vehicle to either: "(1) make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in light of the

1    circumstances under which they were made, not misleading, to any investor or prospective

2    investor in the pooled investment vehicle; or (2) otherwise engage in any act, practice, or course of

3    business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective

4    investor in the pooled investment vehicle." 17 C.F.R. § 275.206(4)-8(a). Accordingly, a violation

5    of Rule 206(4)-8(a) under Section 206(4) also requires the SEC to show defendants are advisers to

6    a "pooled investment vehicle," or an entity, such as a fund, that defendants created to pool money

7    from multiple investors who purchase an interest in the fund and share in profits and losses

8    proportional to their interest in the fund. *See* 17 C.F.R. § 275.206(4)-8(b).

9            Because defendants are alleged to have made material misrepresentations in relation to the

10   offer and sale of securities as previously discussed, a *prima facie* showing of a Section 206(4) and

11   Rule 206(4)-8 violation depends on whether the SEC can show they are investment advisers to a

12   pooled investment vehicle. Here, the SEC has adequately demonstrated the existence of these two

13   conditions, and consequently, violations of Section 260(4) and Rule 206(4)-8. First, defendants

14   managed funds on behalf of investors for compensation. For example, the complaint notes that

15   Toltec Capital would receive half the net profits of the S&P 500 Fund it offered as joint venture

16   principal; as the sole owner of Toltec Capital, Mendia-Alcaraz also directly benefited from the

17   compensation that Toltec Capital received. Accordingly, defendants served as investment advisers

18   under Section 206. The fact that Mendia-Alcaraz misappropriated investor funds is irrelevant to

19   this determination. *See JSG Cap. Investments*, WL 3579570, at *7 (defendants remained

20   investment advisers under Section 206 even if they misappropriated investor funds for improper

21   purposes).

22           Second, the funds defendants advised were pooled investment vehicles. For example, with

23   respect to the Toltec Real Estate Funds offered by Toltec Capital, defendants represented investor

24   funds would be pooled with capital from Toltec Capital for the purpose of executing the fund's

25   investment strategy. Accordingly, the Toltec Real Estate Funds constitute a pooled investment

26   vehicle within the meaning of Rule 206(4)-8.

27

28

#### iv.  Claim under Section 206(1) and 206(2)

Under Sections 206(1) and (2) of the Advisers Act, investment advisers are prohibited from, "directly or indirectly," "employ[ing] any device, scheme or artifice to defraud any client" or "engag[ing] in any transaction, practice, or course of business which operates as a fraud or deceit upon any client." 15 U.S.C. § 80b-6(1) and (2); *Vernazza v. SEC*, 327 F.3d 851, 858 (9th Cir. 2003). In essence, Sections 206 "imposes a fiduciary duty upon investment advisers to exercise the utmost good faith in dealing with clients, to disclose all material facts to their clients, and employ reasonable care to avoid misleading their clients." *SEC v. Sztrom*, 538 F.Supp.3d 1050, 1056 (S.D. Cal. May 11, 2021) (citing *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 194 (1963)).

As discussed above, defendants served as investment advisers to the funds offered by Toltec Capital. By misappropriating investor funds for Mendia-Alcaraz's personal use or making payments to other investors, they breached their fiduciary duty to their clients. Accordingly, the SEC has adequately established a violation of Sections 206(1) and (2).

### 3.    Money at Stake

The fourth factor "pertains to the amount of money at stake in relation to the seriousness of [d]efendant's conduct." Although the SEC seeks over $5 million in disgorgement, interest, and civil penalties, that sum is proportionate to the seriousness of the securities violations and the resulting harm.  Given the nature of the conduct alleged, presumed true, the civil penalties assessed are appropriate to deter the violations at issue. *See SEC. v. Clark*, No. C 09-3423, 2010 WL 890247, at *2 (N.D. Cal. Mar. 8, 2010). Accordingly, while the substantial sum sought by the SEC warrants caution, it does not preclude default judgment under all the circumstances here.

### 4.    Possibility of Disputed Facts and Excusable Neglect

The fifth and sixth *Eitel* factors, concerning disputed facts and excusable neglect, weigh in favor of default judgment. There is nothing suggesting significant disputes likely exist as to the

central and material facts about the alleged violations of the relevant securities laws. Additionally, there is no indication defendants and relief defendants' failure to participate in the litigation is due to excusable neglect, particularly when the communications between the SEC's counsel and Mendia-Alcaraz clearly shows defendants and relief defendants were aware of this litigation, their legal obligation to respond, and the default that was entered when they did not.

### 5. Resolution on the merits

The final *Eitel* factor acknowledges the general policy preference for resolution on the merits, and will therefore always weigh against entry of a default judgment. Under all the circumstances here, however, it is not a reason to deny the SEC's motion. *See*, *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. Dec. 27, 2002) (A defendant's failure to appear, "makes a decision on the merits impractical, if not impossible.); *Kloepping v. Fireman's Fund*, No. 3:94-CV-02684, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996) ("the preference to decide cases on the merits does not preclude a court from granting default judgment.")

### C.  Remedies

#### 1.  Injunctive Relief

The SEC seeks three forms of injunctive relief: (1) a judgment permanently enjoining defendants from future violations of the securities laws allegedly violated in the complaint, (2) a permanent injunction against Mendia-Alcaraz from serving as an officer or director of any company that has securities registered with the SEC, and, (3) a permanent injunction against Mendia-Alcaraz from participating, directly or indirectly, in the issuance, purchase, offer, or sale of any securities, except for purchases or sales for his own personal accounts.

Section 20(b) of the Securities Act, Section 21(d)(1) of the Exchange Act, and Section 209(d) of the Advisers Act authorize the SEC to seek an injunction enjoining defendants from future violations. *See* 15 U.S.C. §§ 77t(b), 78u(d)(1), 80b-9(d). To obtain such relief, the SEC must establish that there is a reasonable likelihood of future violations. *See Murphy*, 626 F.2d at

655 ("The existence of past violations may give rise to an inference that there will be future violations."). In predicting the likelihood of future violations, relevant factors include: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (5) the sincerity of the defendant's assurances against future violations. *Id.* Considering the recurrent nature of defendants' violations and the high degree of scienter involved, the SEC has adequately established that future violations are likely, and that injunctive relief is warranted. *See SEC v. C3 Int'l, Inc., et al.*, No. 8:21-CV-01586, 2022 WL 16814859, at *8 (C.D. Cal. Nov. 7, 2022). This conclusion is buttressed by the fact that defendants' failure to appear "precludes any assurances against future violations and is evidence that [defendants] [do] not recognize the wrongful nature of [their] conduct." *Id.*

Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act authorizes a court to prohibit any person who violates Section 17(a)(1) of the Securities Act or Section 10(b) of the Exchange Act from serving as an officer or director of any issuer that has a class of securities registered with the SEC. *See* 15 U.S.C. §§ 77t(e), 78u(d)(2). To obtain relief under these provisions, the SEC must show that the person's conduct demonstrates "unfitness" to serve as an officer or director. *See id.* Relevant factors in determining the imposition of an officer and director bar include "(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998) (citation omitted). Accepting the SEC's factual allegations as true, all of *First Pac. Bancorp's* enumerated factors are met. First, Mendia-Alcaraz's conduct was egregious, given his numerous false and misleading statements made to investors. Second, the conduct recurred over a span of approximately four years. Third, as the owner and sole controller of Toltec Capital during the alleged violations, Mendia-Alcaraz was the primary instigator and facilitator of the alleged

fraud. Fourth, Mendia-Alcaraz displayed a high degree of scienter through knowingly or recklessly making false statements and misrepresentations to investors. Fifth, Mendia-Alcaraz received direct financial benefits from his violations. Finally, as previously discussed, it appears likely that Mendia-Alcaraz may commit future violations absent judicial intervention. Accordingly, the imposition of an officer and director bar is warranted.

Finally, federal courts possess inherent equitable authority to issue a conduct-based injunction not explicitly authorized by statute to prohibit Mendia-Alcaraz from participating in the issuance, purchase, offer, or sale of any securities, except for purchases or sales for his own personal accounts. *See SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Such an injunction, however, must be narrowly tailored to prevent future violations of federal securities laws. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010). As previously discussed, the SEC has shown a high likelihood that Mendia-Alcaraz will engage in future violations of federal securities laws and a number of courts have entered comparable injunctions against similarly situated defendants. *See e.g.*, *JSG Cap. Investments*, WL 3579570, at *10; *SEC v. Sethi Petroleum, LLC*, No. 4:15-CV-338, 2015 WL 4040123, at *1 (E.D. Tex. Jul. 1, 2015). In light of the nature of Mendia-Alcaraz's alleged conduct in this case, the SEC's requested conduct-based injunction is warranted.

### 2.  Disgorgement from Defendants

Courts possess both statutory authority under the Exchange Act, as well as broad equity powers to order disgorgement in SEC enforcement actions. *See* 15 U.S.C. §§ 78u(d)(3), (d)(5), (d)(7); *First Pac. Bancorp*, 142 F.3d at 1191. Further, "where two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they [may be] held jointly and severally liable for the disgorgement of illegally obtained proceeds." *Id.* Because disgorgement is intended to "deprive a wrongdoer of unjust enrichment, and or deter others from violating securities laws . . . '[t]he amount of disgorgement should include all gains flowing from the illegal activities.'" *Platforms Wireless*, 617 F.3d at 1096 (citing *First Pac.*

*Bancorp*, 142 F.3d at 1191). The disgorgement amount need be "only a reasonable approximation of the profits casually connected to the violation." *Id.* Finally, where disgorgement is imposed, a court may also impose prejudgment interest "to ensure that the wrongdoer does not profit from the illegal activity." *SEC v. C3 Int'l, Inc.*, No. 8:21-CV-01586, 2024 WL 3465615, at *10 (C.D. Cal. Jul. 17, 2024) (citing *SEC v. Cross Financial Services, Inc.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995). In calculating prejudgment interest, the SEC may rely on the Internal Revenue Service underpayment rate set forth in 26 U.S.C § 6621(a)(2). *See Platforms Wireless*, 617 F.3d at 1099-1100.

Here, the SEC seeks disgorgement from defendants, jointly and severally, in the amount of $2,207,524, and prejudgment interest of $150,866. The SEC's calculation of the appropriate disgorgement is based on evidence assessed by SEC accountant Zachary Scrima. The SEC contends defendants received a total of $3,341,025 in investor funds through their fraudulent activities, from which $1,133,500 was paid out to investors. The SEC's evidence thus establishes $2,207,524 as a reasonable approximation of the "gains flowing from the illegal activities" and is a suitable basis for disgorgement. *See Platforms Wireless*, 617 F.3d at 1096.

In conjunction with its request for disgorgement, the SEC also requests prejudgment interest from October 1, 2023 (the first day of the month following the last day that investor funding was received), through July 31, 2024 (the last day of the month preceding the commencement of this case), in the amount of $150,866, based on the prejudgment interest rate set forth at 26 U.S.C. § 6621(a)(2). The SEC's calculations appear correct and prejudgment interest in the amount of $150,866 is appropriate.

### 3. Disgorgement from Relief Defendants

In addition to ordering disgorgement from a liability defendant, a court may exercise equity powers "to order disgorgement from non-violating third parties,' or relief defendants, 'who have received proceeds of others' violations to which the third parties have no legitimate claim.'" *SEC v. Beck*, No. 2:22-CV-008212, 2024 WL 1626280, at *15 (quoting *SEC v. World Cap. Mkt.,*

*Inc.*, 864 F.3d 996, 1003-04 (9th Cir. 2017)). To obtain disgorgement from a relief defendant, the SEC must show that the relief defendant: (1) received ill-gotten funds and (2) does not have a legitimate claim to those funds. *Id.* A relief defendant may also be held jointly and severally liable with a liability defendant for disgorgement and prejudgment interest. *See id.*

Here, the SEC seeks disgorgement from Ramirez Cano, jointly and severally liable with Defendants, for disgorgement of $3,654 with prejudgment interest of $249. Based on the evidence submitted by the SEC, this amount represents investor funds that Mendia-Alcaraz transferred to a personal account he co-owned with Ramirez Cano and that Ramirez Cano spent. Prejudgment interest was also calculated based on the method previously discussed. Because Ramirez Cano received funds through fraud perpetrated by Mendia-Alcaraz and because she lacks a legitimate claim to these funds, disgorgement and prejudgment interest in the amount of $3,654 and $249 is appropriate. Similarly, the SEC has adequately shown relief defendant Fondo Toltec is jointly and severally liable with defendants for disgorgement of $554,563, plus prejudgment interest of $37,899.

### 4. Civil Monetary Penalties

The Securities Act, Exchange Act, and the Advisers Act authorize courts to assess civil penalties for violations of those statutes and the rules thereunder. *See* 15 U.S.C. §§ 77t(d), 78u(d)(3), 80b-9(e). "The purpose of imposing monetary penalties in addition to disgorgement of profits is to punish the violator as well as deter future violations of the securities laws." *JSG Cap. Investments*, WL 3579570, at *12 (citing *SEC v. Moran*, 944 F.Supp. 286, 296 (S.D.N.Y. 1996). In authorizing the imposition of monetary penalties, Congress established a three-tiered system, each enumerating a specific penalty amount for each violation of the securities laws, to guide courts in determining the appropriate penalty amount. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3); 17 C.F.R. § 201.1004. Alternatively, a court may also impose a penalty up to "the gross amount of pecuniary gain to [the] defendant as a result of the violation," regardless of the tier. 15 U.S.C. §§ 77t(d)(2), 78u(d)(3). Within the confines of those maximum limits, the amount of the penalty is at

the discretion of the court, to be determined "in light of the facts and circumstances" of the case. 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i).

Here, the SEC seeks the imposition of civil monetary penalties against Mendia-Alcaraz in the amount of $2,207,524. The egregious nature of Mendia-Alcaraz's conduct in this case resulted in substantial losses to the investors and warrants the imposition of third-tier penalties. Mendia-Alcaraz defrauded investors over several years through numerous false and misleading statements and the misappropriation of funds. Additionally, Mendia-Alcaraz's failure to respond to the complaint, despite being aware of this litigation, evinces no acceptance of responsibility nor assurances against future violations. *See C3 Int'l,* Inc., 2022 WL 16814859, at *8. Accordingly, the imposition of a civil penalty equal to Mendia-Alcaraz's disgorgement amount of $2,207,524 is appropriate to punish Mendia-Alcaraz and deter future violations of the securities laws.

## CONCLUSION

For the foregoing reasons, the SEC's motion for entry of default judgment is granted. The SEC's proposed form of judgment will be entered separately.

**IT IS SO ORDERED**.

Dated: December 16, 2025

_____
RICHARD SEEBORG
Chief United States District Judge